In the Matter of the Claim of John Hassell, Respondent, v. Oxford Filing Supply Co., Inc., et al., Appellants. Workmen's Compensation Board, Respondent.

Third Department, July 2, 1962.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Joseph Dean Edwards* for appellants.

*Lee & Kirsch* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HERLIHY, J. The work the claimant was doing required him to lower metal products into a large tank containing trichloroethylene in order to remove the grease from the said metals.

He first consulted a doctor on January 30, 1959 complaining of pain and a numbing sensation in both arms and legs and occasional substernal chest pain. The doctor, after examination, made a diagnosis of peripheral neuritis and sent him to an internist who agreed with the diagnosis and recommended hospitalization. He was also, at the request of his doctor, examined by a neurological consultant while confined to the hospital. As part of the claimant's report to his doctor, he stated that for approximately two and one-half years he had suffered from fever and loss of weight, both of which conditions the doctor found were not associated with peripheral neuritis.

The claimant had worked at this particular job for the same employer for approximately five years preceding January, 1959 and it appears undisputed in the record that during a major portion of that time he was exposed to trichloroethylene fumes.

The appellants contend that the finding of the board that the claimant sustained an occupational disease is not supported by substantial evidence and there is no causal relationship.

This is a type of illness which demonstrates that medicine is not an exact science. There was a marked difference of opinion among the medical experts as to whether claimant was suffering from peripheral neuritis or some other condition caused by exposure to trichloroethylene poisoning. That the illness was a rarity was demonstrated by the fact that none of the doctors had ever treated such a condition prior to this occasion.

The doctors for the carrier, based primarily upon a lack of a toxic agent in a test performed and from reading medical literature, were of the opinion that the claimant was not suffering from the alleged disease but that he had an underlying disease " undiagnosed and it required extensive hospital care ".

They were of the further opinion that some of the necessary symptoms for such a condition were not present.

The attending physician for the claimant, based upon his observation and treatment, together with reports from an internist and neurological consultant, gave his opinion that the claimant was suffering from peripheral neuritis, caused by trichloroethylene poisoning resulting from exposure to that solvent. He further substantiated this opinion by stating that medical literature he had read stated that close proximity to such a solvent for a long period of time was one of the possible causes of the disease of the type and nature from which the claimant was suffering. He felt his position further fortified by the fact that the claimant, at his order, was able to return to work in a part of the plant where he was no longer exposed to the solvent.

The Referee disallowed the claim and thereafter the board rescinded that decision and appointed an impartial specialist. This doctor was an expert in " chemical hazards in industry " and after examining the claimant his diagnosis was " trichloroethylene poisoning with multiple neuritis and subsequent cirrhosis of the liver with resulting splenomegaly ". He further stated that while the claimant suffered from other nonrelated conditions " in my opinion trichloroethylene poisoning accounts for the larger part of his disabilities ". He also stated that claimant advised him he had been operated on for gallstones and that " People with gall bladder disease are particularly susceptible to halogenated hydrocarbon " (e.g., trichloroethylene).

In sum, while the doctors for the claimant used different medical expressions as to the condition they found the claimant suffering from, they were of the opinion that the condition was due to his long exposure to the solvent.

This is not the type of medical evidence which was rejected as being a guess by the Court of Appeals in *Matter of Miller* v. *National Cabinet Co.* (8 N Y 2d 277). There the claimant died of leukemia, the cause of which was medically unknown. It was contended that this blood disease was contracted from exposure to benzol, but the claimant's personal physician declined to express an opinion that the leukemia resulted from his employment and the strongest testimony favorable to the contention of the claimant was expressed by an expert witness in answer to a hypothetical question. He stated that " he believes [doctor's opinion] that a person exposed to benzol may develop this kind of leukemia " (p. 282).

In *Matter of Palermo* v. *Gallucci & Sons* (5 N Y 2d 529) the medical question concerned a coronary attack suffered by the claimant and the causal relation of it to his subsequent death. In that case there was the usual pattern of conflicting medical testimony based upon all of the facts, including the autopsy report and microscopic findings. There was a sharp issue as to the length of time necessary for the formation of the thrombosis essential to the establishing of causal relationship. The Court of Appeals stated (p. 533): '' The testimony of each expert was sufficiently direct and specific to create an issue of fact and to warrant a finding either for or against causal relation.''

So in the present factual situation the medical experts have given their opinions based upon their examinations, medical research and studies, and have differed as to whether trichloro-ethylene poisoning was the cause of the present condition from which claimant suffers. The testimony is not based upon speculation or surmise, but, to the contrary, rather there is sufficient fulcrum medically to support the finding of the board. As we said in *Palermo* '' the medical testimony accepted by the board is not incredible as a matter of law ''. (6 A D 2d 911, 913.)

The decision and awards of the Workmen's Compensation Board should be affirmed.

BERGAN, P. J., GIBSON, REYNOLDS and TAYLOR, JJ., concur.

Decision and awards affirmed, with costs to the Workmen's Compensation Board.